IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEETA D. JOELL | : | CIVIL ACTION |
|  | : | NO. 13-3549 |
|  | : |  |
| vs. | : |  |
|  | : |  |
| NORTHWESTERN HUMAN SERVICES, et al. | : |  |

O'NEILL, J.                                                                                                                                                                    October 29, 2013

## **MEMORANDUM**

I have before me defendants' motion to dismiss and plaintiff's response thereto. The brief in support of the motion advances several grounds in support of the motion. I will grant defendant's motion to dismiss on the basis of res judicata.

On March 5, 2012, plaintiff Seeta D. Joell filed a complaint in the Philadelphia Court of Common Pleas against defendants NHS Philadelphia,[1] Caitlin Lewis and Beth Caraccio alleging defamation and tortious interference with contract. Dkt. No. 6-3. She alleged the facts as follows.

Plaintiff was hired by NHS as a speech therapist in 1997. Id. at ¶ 7. Defendants Lewis and Caraccio were respectively, plaintiff's immediate supervisor and Executive Director of NHS. Id. at ¶ 9. Plaintiff alleges that beginning in 2008 Lewis started complaining that plaintiff had been at NHS for "a long time" and suggested that a younger, more "modern" person might work best at NHS. Id. at ¶ 14. Plaintiff further alleges that Lewis constantly and consistently subjected plaintiff to a pattern and practice of unwarranted criticism over a variety of issues regarding computers and attendance of meetings. Id. at ¶ 16. For example, Lewis would

---

[1] Plaintiff's complaint named defendant "Northwestern Human Services" which defendants aver is an incorrect designation of the entity. Dkt. No. 6-2 at 1.

complain about plaintiff's alleged incomplete, untimely or improperly entered information into the NHS computers when such was not the case. Id. at ¶ 18. On other occasions, plaintiff alleges Lewis accused her of having intentionally missed meetings when plaintiff's attendance at such meetings had been excused or delayed until a later date. Id. at ¶ 22.

Finally, in May 2001, Lewis accused plaintiff of having falsified information about having had a consultation with a child and then written into the NHS computer an "initial progress note" when she had not met with the child. Id. at ¶ 37-38. Plaintiff alleges that this accusation was baseless but that it led to Caraccio placing her on administrative leave, and as a result she formally resigned from her employment with NHS. Id. at ¶¶ 43,45. Plaintiff also alleges that she interviewed for a position as a speech therapist with the Elwyn Institute in Philadelphia and accepted a verbal offer of employment from its Director. Id. at ¶¶ 47-49. However, plaintiff alleges that thereafter defendant Caraccio sent the plaintiff a letter informing her that her employment was terminated because she had made a false report of a client contact. Id. at ¶ 50. Caraccio also reported to the Elwyn Institute that plaintiff had falsified information in a report and that she had been terminated from her position as a result thereof. Id. at ¶ 52. The Director of the Institute then withdrew its offer of employment because of "the specifics of" plaintiff's "termination from NHS." Id. at ¶¶ 55-56. Plaintiff alleged that as a result of defendant's acts she suffered anguish, humiliation, loss of professional status and esteem, loss of a contractual opportunity, loss of an offer of employment, loss of income and loss of professional opportunity. Id. at ¶ 57.

In response to plaintiff's complaint, defendants filed preliminary objections that were sustained without prejudice. Dkt. No. 6-4. Joell then filed an amended complaint in which she named only NHS as a defendant. Dkt. No. 6-5. She, however, continued to predicate her claims

on exactly the same actions of Caraccio and Lewis which were alleged in the original complaint and also alleged the same elements of damage as were alleged in the original complaint. Id. NHS filed preliminary objections to the amended complaint which were sustained by the Court with prejudice. Dkt. No. 6-6. Approximately three months later, plaintiff filed a motion for reconsideration nunc pro tunc and after that motion was denied, appealed to the Superior Court of Pennsylvania. On January 24, 2013, the Superior Court quashed plaintiff's appeal for untimeliness. Dkt. No. 6-7.

On June 21, 2013, Joell filed the present action against NHS, Lewis and Caraccio asserting claims under 42 U.S.C. § 1981 and § 1988. Dkt. No. 1. Most of the allegations in the complaint are identical to and some are verbatim of the allegations in the State Court complaint. For example, the complaint alleges that in December 2008 Lewis began complaining that Joell had been at NHS for a long time and suggesting that a younger more "modern" person might work best at NHS. Id. at ¶ 14. Further, that Lewis and Caraccio constantly and consistently subjected Joell to unwarranted criticism over a variety of issues especially those having to do with computers and attending meetings. Id. at ¶ 16. The complaint alleges that Lewis began finding fault with Joell's work and computer skills. Id. at ¶ 17. For example, Lewis would complain that plaintiff input information into the NHS computers saying that it was either incomplete, untimely or improperly entered when, in fact, the information had been entered completely, properly and timely. Id. at ¶ 18. In addition, the complaint alleges that Lewis would accuse plaintiff Joell of having intentionally missed meetings when, in fact, her attendance at such meetings had been excused or put off until a later date. Id. at ¶ 22. Further, the complaint alleges that Caraccio accused Joell having written false information on progress note on an NHS computer indicating she worked with a particular client when she had not met with the child,

thereby, falsifying information about a contact that she had not made. Id. at ¶¶ 37-38. The complaint alleges that this incident led to Joell's suspension by NHS. Id. at ¶ 43. During the suspension she interviewed for a position with the Elwyn Institute which offered her a job and she accepted. Id. at ¶¶ 47-49. Thereafter, Caraccio communicated with the Institute and reported to it that Joell had falsified information in the report and she had been terminated from her position as a result. Id. at ¶ 52. Accordingly, Elwyn's offer of a job was rescinded. Id. at ¶¶ 55-56. The complaint alleges the same elements of damages as were alleged in the State Court complaints: anguish, humiliation, loss of professional status and esteem, loss of a contractual opportunity, loss of an offer of employment, loss of income and loss of professional opportunity. Id. at ¶ 57.

New allegations in the present complaint which did not appear in the State Court complaint are as follows.

Plaintiff alleges that Lewis and Caraccio conspired to harass and annoy Joell and to subject her to hostile treatment for the reason that she was non-white and considered to be East Asian or black. Id. at ¶ 13. Plaintiff alleges that from the inception of her duties as a supervisor, Lewis began communicating a disdain and/or dislike of her and others of East Asian descent when Lewis often prefaced comments made to Joell with such phrases as "[y]ou East Asians" and "[y]ou people." Id. at ¶ 11. Plaintiff alleges that Lewis and Caraccio reprimanded Joell for having prepared a work-related report from her home when such procedure was a permitted as matter of course and that this reprimand was issued for no other reason than her being non-white and considered East Asian or black since similarly situated white employees were not reprimanded. Id. at ¶¶ 19-21. In addition, plaintiff alleges that Lewis required Joell to telephone her to let her know of her whereabouts whenever Joell had to absent herself from the work area

in order to visit the restroom, and this was required of Joell for no reason other than that Joell was non-white and considered East Asian or black, since similarly situated white employees were not required to do so. Id. at ¶¶ 24-26. In addition, plaintiff alleges that Lewis would contrive disparaging facial gestures and inquire "how do you people eat such things" when she brought lunch that often consisted of ethnic Asian cuisine and ate it at her desk. Id. at ¶¶ 27-28. Plaintiff also alleges that on numerous occasions when Caraccio and Lewis presided over staff meetings, they would acknowledge comments and input made by white employees but would ignore those made by Joell and assume her to be invisible. Id. at ¶ 32. Plaintiff alleges that generally, Lewis would not communicate with Joell for long periods of time and would behave towards Joell with coldness and distance for no other reason than she was non-white and considered East Asian or black. Id. at ¶¶ 33-34.

Plaintiff alleges that, in violation of 42 U.S.C. § 1981, the actions of defendants caused her to be deprived of her right to make and enforce her employment contract. Plaintiff seeks compensatory damages and attorney's fees as allowed by 42 U.S.C. § 1988.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted). The question is not whether plaintiffs will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007). Instead, for plaintiffs' claims to survive defendants' motions to dismiss, their "complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## DISCUSSION

Res judicata bars claims or defenses that were or could have been raised in a prior proceeding. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). "Although res judicata is an affirmative defense for a defendant to plead, . . . dismissal [under Rule 12(b)(6)] may be appropriate when it is obvious, either from the face of the pleading or from other court records, that an affirmative defense such as res judicata will necessarily defeat the claim." Shah v. United States, No. 13-2383, 2013 WL 5421992, at *2 (3d Cir. Sept. 30, 2013), citing Fed. R. Civ. P. 8(c); Jones v. Bock, 549 U.S. 199, 215 (2007). Claim preclusion precludes relitigation of "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Brown v. Felsen, 442 U.S. 127, 131 (1979). It "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding." CoreStates Bank, N.A. v. Huls Am. Inc., 176 F.3d 187, 194 (3d Cir. 1999) (emphasis in original) (citation omitted). The purpose of claim preclusion is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980).

To prevail on a motion seeking to invoke the doctrine of claim preclusion, defendants must show "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010) (citations omitted). Since plaintiff concedes that the

same parties or their privies appear as defendants in the present action as approved in the State Court action,[2] I will consider only whether the other two elements for claim preclusion are satisfied here.

I. **Final Judgment on the Merits**

Plaintiff asserts in her response to defendants' motion to dismiss that the State Court had not adjudicated the merits of any of her causes of action, and thus defendant has not met its burden to establish preclusion. Dkt. No. 7 at 25. I disagree. Defendants' preliminary objections to Joell's amended complaint were sustained with prejudice and plaintiff's appeal to the Superior Court was quashed. "Under Pennsylvania law, where the court sustains a demurrer and dismisses a complaint, such an order is final and appealable." Richardson v. Folino, No. 12-87, 2012 WL 6552916, at *6 (W.D. Pa. Dec. 14, 2012) citing Brown v. Kleinfelter, 406 A.2d 560, 561 (Pa. Super. Ct. 1979); see also Reiff v. City of Phila., 471 F. Supp. 1262, 1266 n.3 (E.D. Pa. 1969) (noting that where the Court of Common Pleas dismisses a plaintiff's action on preliminary objections in the nature of a demurrer, the order sustaining the demurrer and the judgment thereon constitutes a final valid judgment on the merits which carries res judicata effect under Pennsylvania law). Plaintiff's assertion that the merits of her claims were not addressed by the State Court is, in my view, devoid of merit.

II. **Same Cause of Action**

For purposes of determining whether claim preclusion applies, the Court "take[s] a 'broad view' of what constitutes the same cause of action." Sheridan v. NGK Metals Corp., 609 F.3d 239, 261 (3d Cir. 2010) (citations omitted). "Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying

---

[2] Dkt. No. 7 at 19.

events giving rise to the various legal claims, although a clear definition of that requisite similarity has proven elusive." Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp., 688 F.2d 166, 171 (3d Cir. 1982); see also Duhaney, 621 F.3d at 348 (same). Relevant considerations include "whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." United States v. Athlone, Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984); see also Duhaney, 621 F.3d at 348 (same). "[T]he mere inclusion of a new cause of action in a subsequent complaint will not rescue a lawsuit from res judicata where the underlying events that give rise to the new allegations are essentially the same as those in the earlier action. Jarvis v. Analytical Lab Servs., 499 F. App'x 137, 138 (3d Cir. 2012).

Plaintiff's assertion of a different legal theory in this action is not sufficient to bar preclusion of her claims against defendants. "Claim preclusion . . . prohibits reexamination not only of matters actually decided in prior case, but also those that parties might have, but did not, assert in that action." Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993). As an example, consider Taggart v. Chase Bank, USA, N.A., 375 F. App'x 266, 268 (3d Cir. 2010) where the Court of Appeals affirmed the District Court's dismissal of plaintiff's claims on res judicata grounds, finding that the plaintiff was "merely attempting to split a cause of action, which he is not permitted to do." The plaintiff in Taggart had previously filed a claim asserting violations of the Truth in Lending Act, but after his TILA claims were dismissed as time-barred he then filed a second action based on the same underlying events, but alleging additional causes of action including claims under the Fair Credit Reporting Act, the Real Estate Settlement Procedures Act and the Fair Debt Collections Practices Act. Id. at 267. The plaintiff in Taggart argued that his new claims "were unknown at the time the original complaint was filed" and that

"the District Court denied him [the] opportunity to amend his original complaint to include these violations." Id. at 268 (internal quotations and citations omitted). The Court of Appeals held that the plaintiff's argument that he was not permitted to amend his original complaint to add the claims was "unavailing" when he knew of his new claims during a three-month period prior to dismissal of the initial action, but failed to do so. Id. at 269. See Elkadrawy v. The Vanguard Grp., 584 F.3d 169, 173-74 (3d Cir. 2009) (finding that it did "not matter for res judicata purposes that Elkadrawy proceeds under § 1981 rather than Title VII" as in the prior litigation because the allegations arose out of the same underlying events and "could have been brought as part of his first complaint").

Here, the crux of Joell's response to defendants' motion to dismiss is that her State Court action was for libel and slander while the present matter arises under 42 U.S.C. § 1981 and, further, that the "issues relevant to that earlier matter are entirely irrelevant to those raised in this later matter." Dkt. No. 7 at 1. Specifically, plaintiff argues that the actions involved in the instant case are dissimilar from the prior actions in State Court, as are the majority of acts complained therein, the theory of recovery, and the witnesses and documents necessary at trial. Dkt. No. 7. I do not find plaintiff's submission persuasive.

"Isolating the alleged wrongful act is critical to the first requirement [of res judicata]— identity of subject matter." Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988). Where the same incident forms the basis of both suits, there is identity of subject matter for claim preclusion. Id. Both plaintiff's state law claims for slander and intentional interference with a contractual relationship and her federal claim under § 1981 arise from the same incident. Both are premised upon the alleged hostile actions of Lewis and Caraccio against Joell; the difference is that in the present action Joell alleges that the motivation for these hostile actions was discrimination and

retaliation because of her race.  Dkt. No. 7 at 3.  In her state action, plaintiff alleged that Lewis and Caraccio's unprivileged published communication defamed and libeled her and intentionally interfered with her potential and contractual relations with the Elwyn Institute, thus causing her to lose an employment opportunity with the Institute.  Dkt. No. 6-2 at ¶ 53, 56, 60, 63, 67.  In her current action, plaintiff alleges that the "acts and failures of Lewis and Caraccio" caused her "to be deprived of her right to make and enforce her employment contract and her rights under § 1981 "for no other reason than that she was non-white, and regarded as East Asian or Black."  Dkt. No. 1 at ¶ 60.  The common incident underlying both actions is Lewis' allegedly false accusation that plaintiff reported falsified information on a progress note about having had a consultation with a child client and Caraccio's communication of the accusation to the Institute.  Dkt. No. 1 at ¶¶ 37-40, 43, 49-53; Dkt. No. 6-2 at ¶¶ 19-23, 28, 38.  As an alleged result of Lewis and Caraccio's actions, the Director of the Institute then withdrew her offer of employment to the plaintiff.  Dkt. No. 1 at ¶¶ 55-56; Dkt. No. 6-2 at ¶¶ 46-48.  The same cause of action underlies both plaintiff's prior and current claim that defendants' actions constitute tortious interference with a prospective contract of employment.  Therefore, I find that plaintiff's current claim is precluded.

Plaintiff could have asserted her present causes of action in the Court of Common Pleas as the Court has jurisdiction over actions under 42 U.S.C. § 1981.  <u>Bradshaw v. General Motors Corp.</u>, 805 F.2d 110, 112-13 (3d Cir. 1986), <u>abrogated on other grounds by</u> <u>Yellow Freight Sys., Inc. v. Donnelly</u>, 494 U.S. 820 (1990) (noting that federal and state courts have concurrent jurisdiction over § 1981 claims).  Her failure to do so then precludes her from asserting them now.

An appropriate Order follows.